# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI

LAURA FRANCES HAYS,        )
on behalf of herself and all others     )
similarly situated,           )
                      )
        Plaintiff,        )
                      )
      v.             )     Case No. 4:17-CV-0353-BCW
                      )
NISSAN NORTH AMERICA, INC.,   )
                      )
        Defendant.      )

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL AND TO DIRECT NOTICE TO THE CLASS

DATED: March 7, 2022

Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

Matthew L. Dameron (MO Bar No. 52093)
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Tel:   (816) 945-7110
matt@williamsdirks.com

**STUEVE SIEGEL HANSON LLP**

Norman E. Siegel (MO Bar No. 44378)
Todd E. Hilton (MO Bar No. 51388)
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel:   (816) 714-7100
siegel@stuevesiegel.com
hilton@stuevesiegel.com

*Counsel for Plaintiffs and the Proposed Settlement Class*

*Additional Counsel on Signature Page*

i

# TABLE OF CONTENTS

I.      Procedural History and Settlement Overview ................................................................ 2

II.     Legal Standard ............................................................................................................... 6

III.    The Settlement Approval Process ................................................................................... 7

IV.     The Settlement Satisfies Rule 23(**e**)'s Factors ................................................................ 8

    A.      Plaintiff and her counsel have adequately represented the Settlement Class ................. 9

    B.      The settlement was negotiated at arm's length. ........................................................... 10

    C.      The relief provided for the Settlement Class is adequate. ............................................ 11

        1.      The costs, risks, and delay of trial and appeal. ......................................................... 11

        2.      The effectiveness of administration. ........................................................................ 12

        3.      The proposed attorneys' fees. .................................................................................. 13

        4.      The proposal treats Settlement Class Members equitably. ......................................... 14

    D.      The Experience and Views of Counsel. ...................................................................... 15

    E.      The Requested Service Award Is Reasonable. ............................................................ 15

V.      Class Certification for Settlement Purposes Is Appropriate. ......................................... 16

VI.     Conclusion ................................................................................................................... 17

# **TABLE OF AUTHORITIES**

**Cases**

*Ashley v. Reg'l Transp. Dist.*, No. 05-01567, 2008 WL 384579 (D. Colo. Feb. 11, 2008).......... 10

*Bellows v. NCO Fin. Sys., Inc.*, No. 07-CV-01413, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008)6

*Claxton v. Kum & Go, L.C.*, No. 16-3385, 2015 WL 3648776 (W.D. Mo. June 11, 2015)......... 16

*Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo. 2005) .................................................................. 6

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .......................................................................... 17

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................................. 14

*In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. 2002) ...................................... 15

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) .......................................................................................................................................... 6

*In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F.Supp.2d 180 (S.D.N.Y. 2003) .................. 13

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057 (8th Cir. 2013) .......................................................................................................................................... 6

*Johnson*, 2015 WL 12806576 (W.D. Mo. Dec. 12, 2015)............................................................ 16

*Liles v. Del Campo*, 350 F.3d 742 (8th Cir. 2003)......................................................................... 7

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No., 1*, 921 F.2d 1371 (8th Cir. 1990) 6

*Marcus v. Kansas*, 2069 F. Supp. 2d 1179, 1182 (D. Kan. 2002) ................................................ 10

*Marshall v. Nat'l Football League*, 787 F.3d 502 (8th Cir. 2015) ................................................. 6

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ........................................................... 6

*Rawa v. Monsanto Co.*, No. 17-1252, 2018 WL 2389040 (E.D. Mo. May 25, 2018)................. 16

*Sanderson v. Unilever Supply Chain, Inc.*, 10-cv-00775-FJG, 2011 WL 5822413 (W.D. Mo. Nov. 16, 2011) ......................................................................................................................... 15

*Schoenbaum v. E.I.Dupont De Nemours & Co.*, 4:05-CV-01108, 2009 WL 4782082 (E.D. Mo. Dec. 8, 2009)........................................................................................................................... 7

*Stephens v. U.S. Airways Group, Inc.*, 102 F. Supp. 3d 222 (W.D. Mo. Nov. 16, 2011).............. 6

*Tussey v. ABB, Inc.*, No. 06-04305, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) .................... 16

iii

*Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005) ......................................... 13

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................ 12

Fed. R. Civ. P. 23(e)(1)(B)(ii) ................................................................................... 17

Fed. R. Civ. P. 23(e)(3) ............................................................................................. 8

Fed. R. Civ. P. 23(f) ............................................................................................ 9, 10

Rule 23 .............................................................................................................. 13, 17

Rule 23(a) ................................................................................................................ 17

Rule 23(b) ............................................................................................................... 17

Rule 23(e) ............................................................................................................... 17

Rule 23(e)(1) .......................................................................................................... 17

Rule 23(h) ............................................................................................................... 14

**Other Authorities**

2 Joseph M. McLaughlin, McLaughlin on Class Actions, § 6:24 (8th ed. 2011) ................. 14

4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.25, at 38-39 (4th ed. 2011).. 7

4 Newberg on Class Actions § 11.41 ......................................................................... 6

After extensive litigation and extended arms-length negotiations, the parties have reached an agreement to settle this litigation. As set forth herein, the settlement is fair, reasonable, and adequate, and beneficial to members of the Settlement Class, as defined herein.

The settlement addresses concerns of front floor pan corrosion in Class Vehicles (i.e., model years 2002-2006 Nissan Altima and model years 2004-2008 Nissan Maxima). Class Vehicles must either be currently registered in Missouri or were previously registered in Missouri at the time of repair to a front floor pan due to corrosion.

The settlement provides substantial relief, in two forms, to the Settlement Class. First, for current owners and lessees of Class Vehicles that are registered in Missouri, Nissan North America, Inc. (NNA) has agreed to an inspection and repair program. Under this program, Nissan dealerships will inspect Class Vehicles for free and, if there is corrosion in the front floor pans, repair that corrosion free of charge. NNA also will offer rental vehicles to those owners and lessees who request it while the Class Vehicle is being repaired, for up to five days. This benefit is available for one year after the settlement's Effective Date.[1]

Second, for current or former owners and lessees of Class Vehicles that currently are, or at the time of repair were, registered in Missouri who previously paid for floor pan corrosion repairs in Missouri, NNA has agreed to a reimbursement program for those repairs, provided they file a claim and submit supporting information and it is approved by the Claims Administrator. Reimbursement would be in full if the repair was made at a Nissan dealership; repairs made elsewhere would be subject to a cap of $5,000. If NNA has previously reimbursed a Settlement Class Member for the repair, the Settlement Class Member's recovery will be offset by that amount.

---

[1] The Effective Date is defined as the date the settlement becomes final, i.e., when the order granting final approval of the class settlement is final and no longer subject to appeal. *See* Settlement Agreement (Exhibit 1) at ¶¶ 27, 29.

1

In short, the settlement addresses the central allegations of this litigation and achieves the primary relief sought by Plaintiff, i.e., repair and reimbursement for floor pan corrosion in Class Vehicles registered in Missouri. While NNA denies the allegations in the litigation, it has agreed to the settlement reflected herein, and does not oppose this Motion.

Accordingly, because the settlement is eminently fair, reasonable, and adequate, Plaintiff respectfully moves the Court for preliminary approval of the settlement.

## I.    PROCEDURAL HISTORY AND SETTLEMENT OVERVIEW

Plaintiff filed this action in May 2017. NNA filed an initial Motion to Dismiss, which was denied by the Court. Thereafter the parties engaged in significant discovery and motion practice, including exchanging documents, and the depositions of Plaintiff, NNA's corporate representative, and the parties' experts. After discovery, NNA moved for summary judgment; the Court granted in part and denied in part the motion, leaving only Plaintiff's claim under the Missouri Merchandising Practices Act intact.

In March 2021, the Court granted Plaintiff's motion for class certification. NNA sought appellate review of the certification order from the U.S. Court of Appeals for the Eighth Circuit; the Eighth Circuit declined to hear the appeal under Rule 23(f).

Thereafter, the parties engaged in lengthy and protracted settlement discussions. The parties engaged Hon. Jay Daugherty, a well-respected mediator and former judge, to mediate the dispute. Judge Daugherty oversaw three mediation sessions while independently working with counsel outside of those sessions to advance the discussions.[2] The parties did not reach an agreement at any of the three mediations, but continued negotiations. In November 2021—several

---

[2] In addition to these three mediations in 2021, the parties also engaged in an early mediation under the Court's MAP program; that mediation occurred in December 2017. It was not successful.

2

months after the commencement of the negotiations—the parties reached an agreement in principle, subject to approval from the duly authorized representatives of NNA and Nissan Motor Co. Ltd.

In early March 2022, the parties finalized the settlement terms after circulating the supporting documents through several rounds of edits, calls, and further negotiations. The final settlement agreement was fully executed on March 4, 2022. Plaintiff attaches a copy of the fully executed Settlement Agreement and its supporting exhibits as Exhibit 1.

Plaintiff and her counsel believe the claim asserted has merit and that the evidence developed to date supports the claim. However, Plaintiff and her counsel also recognize the risks, costs, and delay of further proceedings in complex cases like this, have evaluated the specific defenses asserted by NNA and the Court's rulings in this case to date, and believe that the settlement confers substantial benefits upon the Settlement Class Members. NNA denies Plaintiff's claim in its entirety and denies any wrongdoing, but wishes to avoid the uncertainty, costs, and risks attendant with further litigation and further demonstrate its commitment to its customers.

The primary terms of the settlement are as follows:[3]

- For current owners and lessees of Class Vehicles that are registered in Missouri, Nissan North America, Inc. (NNA) has agreed to an inspection and repair program. Under this program, Nissan dealerships located in Missouri will inspect Class Vehicles for free and, if there is corrosion in the front floor pans, repair that corrosion free of charge.[4] NNA also will offer rental vehicles to those owners and lessees while the Class Vehicle is being

---

[3] This overview is not intended to replace the terms of the settlement agreement. In the event a perceived conflict, the settlement agreement controls.

[4] Nissan is not responsible for repairing any other undercarriage corrosion or other conditions discovered during the inspection.

3

repaired for up to five days. This benefit is available for one year after the settlement's Effective Date.

- For current or former owners and lessees of Class Vehicles that currently are, or at the time of repair were, registered in Missouri who previously paid for front floor pan corrosion repairs in Missouri, NNA has agreed to fully reimburse them for those repairs, provided they timely file a claim and submit supporting information and it is approved by the Claims Administrator.[5] If a previous repair was performed at a location other than a Nissan dealership, the reimbursement is limited to $5,000.

- Settlement Class Members who do not have the necessary documents to support a full reimbursement claim can submit an attestation to support their claim. Claims supported by attestation will be limited to $300, until the total approved value for all the attestation claims reaches $75,000. Once that threshold is reached, the Settlement Administrator will not have discretion to approve attestation claims.

- NNA agrees to pay separately the cost of notice and administration.

- Written notice of the settlement will be provided to Class Members using vehicle registration data provided by IHS Markit, and a Settlement Administrator with extensive experience in such notice campaigns (Kurtzman Carson Consultants LLC or "KCC"), and includes the establishment of both a settlement website and a toll-free phone number where Class Members can learn more about the settlement and its terms, how to object to or opt-out of the settlement, and a method and instructions for electronically submitting a claim.

---

[5] Supporting information includes documents and/or other information sufficient to verify: (1) proof of repair and repair cost; (2) proof of payment; and (3) sufficient information to enable the Settlement Administrator to verify Missouri ownership at the time of the repair.

4

- Supplemental notice will be provided to the Settlement Class Members (i.e., Class Members who do not choose to opt-out of the settlement) upon the Effective Date of the settlement to remind them of the settlement's availability and its benefits.

- Class Members may opt-out of the Settlement Class at any time during the Opt-Out Period, provided they timely deliver a written request with necessary information for exclusion to the Settlement Administrator. The Opt-Out Period closes sixty (60) days after the Notice is mailed to the Class and posted on the settlement website.

- Plaintiff seeks $6,000 in recognition of her service contributions, to be paid separately and in addition to the other settlement benefits provided under the settlement.

- Plaintiff's counsel seeks attorneys' fees in the amount of $2,750,000. Plaintiff's counsel also will seek reimbursement of costs of no more than $225,000. Both amounts are considered material terms to the agreement but were negotiated after the parties reached agreement on the all other substantive terms of the settlement, and will be paid separately and in addition to the other settlement benefits provided under the settlement.

In sum, the settlement offers considerable and meaningful relief to Settlement Class Members and achieves the primary relief sought by Plaintiff in pursuing the litigation. Accordingly, the Court should preliminarily approve the settlement and authorize notice as set forth herein.

5

## II.    LEGAL STANDARD

"The law strongly favors settlements." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions § 11.41; *see also Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). Moreover, the judgment of class counsel in entering into a proposed class settlement is an important consideration. *Stephens v. U.S. Airways Group, Inc.*, 102 F. Supp. 3d 222, 229 (W.D. Mo. Nov. 16, 2011) (crediting the judgment of class counsel experienced in litigating and settling complex cases, including class actions, settlement was fair, reasonable, and adequate); *Bellows v. NCO Fin. Sys., Inc.,* No. 07-CV-01413, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008) ("it is the considered judgment of experienced counsel that this settlement is fair, reasonable, and adequate settlement of the litigation, which should be given great weight.").

6

Plaintiff's Motion follows the factors outlined in Rule 23(e) but also addresses miscellaneous factors previously analyzed by this and other courts. Under any standard, the settlement is fair, reasonable, and adequate.

## III.    THE SETTLEMENT APPROVAL PROCESS

Approval of a Rule 23 class settlement involves a two-step process. MANUAL FOR COMPLEX LITIGATION, § 21.632 (4th ed. 2004); 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.25, at 38-39 (4th ed. 2011); *see also Schoenbaum v. E.I. Dupont De Nemours & Co.*, 4:05-CV-01108, 2009 WL 4782082, at *2 (E.D. Mo. Dec. 8, 2009) ("As a practical matter, evaluation of a settlement usually proceeds in two stages; before scheduling the fairness hearing, the court makes preliminary determinations with respect to the fairness of the settlement terms, approves the means of notice to class members, and sets the date for that final hearing.") (*citing* Manual § 21.632 and *Liles v. Del Campo*, 350 F.3d 742, 745 (8th Cir. 2003)).

During the first step, counsel submits the proposed terms of settlement and the court makes a preliminary fairness evaluation. If the court is likely to approve the settlement, then it should grant preliminary approval and direct that notice under Rule 23(e) be given to class members of a formal fairness hearing, at which objections may be heard (the second step). *See* Manual § 21.633; Rule 23(E)(1).

This case is currently at the first stage of the settlement process, often called "preliminary approval" stage, where the Court decides whether it is likely to approve the settlement such that notice of the settlement should be sent to the class. Rule 23(e)(1) states that in order to send notice of settlement to the class, the Court must first find that the Court will likely:

1)  "approve the proposal under Rule 23(e)(2)"; and

2)  "certify the class for purposes of judgment . . ."

7

At this first step of the process, Plaintiffs request that the Court grant "preliminary approval" of the Rule 23 settlement and order that notice should be sent to the class; consistent with the terms of the settlement agreement, NNA does not object to Plaintiff's request.

## IV. THE SETTLEMENT SATISFIES RULE 23(E)'S FACTORS

In evaluating the fairness of the settlement, courts consider the factors articulated in Rule 23(e)(2), which include whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i)      the costs, risks, and delay of trial and appeal;

    (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.[6]

According to the Advisory Committee notes: "The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approval the proposal." 2018 Advisory Committee Notes.

---

[6] Rule 23(e) also contemplates that the parties will identify "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). Plaintiff's counsel confirms that no agreements exist other than those outlined herein and reflected in Exhibit 1.

**A.    Plaintiff and her counsel have adequately represented the Settlement Class.**

Plaintiff and her counsel have adequately represented the Settlement Class since the litigation was commenced in 2017. Counsel has diligently pursued the litigation through extensive motion practice and through the discovery process, including diligently seeking related documents and deposing NNA's key witnesses. Furthermore, Plaintiff's counsel identified and retained merits and damages experts to evaluate the litigation and further support Plaintiff's claims. Plaintiff's counsel has diligently prosecuted this matter for over four years, and they have ably represented the Settlement Class's interests in the litigation.[7]

Similarly, Plaintiff has actively participated in the litigation, including responding to written discovery, assisting with other discovery, submitting to deposition, and participating in alternative dispute resolution proceedings, including personally attending the early mediation held in December 2017.

After significant litigation, including certification of the case as a litigation class action and preliminary appellate proceedings under Fed. R. Civ. P. 23(f), the parties reached this proposed agreement on behalf of the following Settlement Class:

> All persons in Missouri who (1) currently own or lease a Class Vehicle, or (2) who previously owned or leased a Class Vehicle and paid for repairs to rust in a front floor pan of a Class Vehicle.

As noted above, Class Vehicles means model years 2002-2006 Nissan Altima and model years 2004-2008 Nissan Maxima vehicles that are currently registered in Missouri, or were previously registered in Missouri at the time of repair to a front floor pan due to corrosion.

---

[7] As set forth in the proposed order accompanying this Motion, Plaintiff requests that the Court confirm its appointment of Matthew L. Dameron, Norman E. Siegel, and Todd E. Hilton as Class Counsel.

9

**B.      The settlement was negotiated at arm's length.**

The settlement was fairly and honestly negotiated. "The fairness of the negotiating process is to be examined in the light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Ashley v. Reg'l Transp. Dist.*, No. 05-01567, 2008 WL 384579 (D. Colo. Feb. 11, 2008) (internal quotation omitted). "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kansas*, 2069 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

After over four years of vigorous litigation, the settlement was honestly and fairly negotiated by competent counsel and involved the assistance of a well-respected mediator, former Judge Jay Daugherty. Prior to any meaningful settlement discussions, the parties exchanged significant written discovery, and deposed key witnesses. Aside from the extensive litigation concerning the merits of the litigation, the parties also disputed class certification, and the related preliminary appellate proceedings under Rule 23(f). The litigation history demonstrates that the adversarial process in this particular case was robust and in no way collusive.

The parties' dispute resolution efforts also reflect the arms-length nature of the settlement. Aside from the parties' unsuccessful early mediation in December 2017, the parties engaged in three other mediation sessions, including several informal efforts with the mediator outside of a formal mediation. None of these efforts were successful until several months after the parties initiated their discussions, and only after extensive negotiations containing the settlement's terms. Furthermore, the parties did not agree to mediation until after important questions concerning the litigation were resolved, including summary judgment, the scope of the proposed class, and class

10

certification—all of which were disputed before this Court. Under these circumstances, it cannot be questioned that the agreement was reached at arm's length.

###    C.    The relief provided for the Settlement Class is adequate.

This settlement provides significant relief to Settlement Class Members and compensates them fairly for their claims and is well within the range of settlements of similar cases, particularly in light of the following factors:

####    *1.    The costs, risks, and delay of trial and appeal.*

The parties naturally dispute the strength of Plaintiff's claims, and the settlement reflects the parties' compromise of their assessments of the worst-case and best-case scenarios, weighing the likelihood of various potential outcomes. Although Plaintiff believes strongly in the merits of her claim, the great number of uncertainties weigh in favor of a guaranteed resolution of the litigation.

This case is complex and carries significant risks for the parties as to both legal and factual issues, and litigating the case to trial would likely consume great time and expense. The remaining discovery, renewed summary judgment, Rule 703 challenges, trial, and appeal would consume significantly more time and resources. Plaintiff will likely have brought multiple witnesses for several days of preparation and testimony, at great expense to the parties and inconvenience to the witnesses. Moreover, the parties would bring expensive expert witnesses to trial. And regardless of the outcome, a lengthy appeal would be likely.

On the other hand, the settlement ensures that Settlement Class Members will recover significant, immediate relief, including that which this litigation primarily sought to achieve, namely, repair or reimbursement for floor pan corrosion.

11

In sum, the settlement brings substantial value to the Settlement Class now, rather than uncertain value to an uncertain number of people at an uncertain time after protracted litigation involving complex and uncertain factual and legal questions.

### 2. *The effectiveness of administration.*

The parties have agreed to use KCC as the Settlement Administrator ("the Administrator"). KCC's qualifications and the proposed Notice Plan is outlined in the Declaration of <u>Carla Peak</u> on behalf of KCC, attached hereto as Exhibit 2. As reflected in Ms. Peak's Declaration, KCC is an experienced class action notice provider and administrator, and has agreed to implement the notice plan provided by the Settlement. Costs of notice and administration will be separately paid by NAA.

For this case, the Administrator has formulated a robust notice plan that encompasses written notice to Class Members. Class Members will be identified using Missouri vehicle registration data for Class Vehicles dating back to 2004. A postcard notice will be directly sent by U.S. mail, which will inform Class Members of the settlement and direct them to a dedicated website for additional information about the settlement: www.MissouirFloorpanSettlement.com. This extensive notice plan is more than sufficient in a consumer class action like the instant case, because the class will receive "individual notice to all members who can be identified through reasonable effort." *See* Fed. R. Civ. P. 23(c)(2)(B).

Moreover, the Administrator will provide supplemental notice to Settlement Class Members during the one-year time period for inspections and repairs. This notice will remind Settlement Class Members about the availability of the settlement and its benefits.

The Notice Plan will clearly inform Class Members of their rights to opt out, to object, or to file a claim, and the mechanisms and deadlines for doing so, and will include all of the information required by Rule 23. The proposed postcard notice is attached hereto as Exhibit 3, and

the long-form notice, which will be available on the settlement website, is attached hereto as Exhibit 4 for the Court's consideration. It contains all of the information required by Rule 23, and it closely tracks the model notice promulgated by the Federal Judicial Center, which is the education and research agency for the federal courts. Indeed, the FJC's illustrative notice that forms the basis for the proposed long-form notice in this case is recognized as the leading model for notice in class actions. *See, e.g., Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 224 (D.N.J. 2005); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F.Supp.2d 180, 185 (S.D.N.Y. 2003).

After the notice period, the Administrator will be responsible for reviewing all claim forms to determine whether a claim is approved.[8] The Administrator will notify a claimant if his or her claim appears deficient. Upon notification, a Settlement Class Member whose may cure the deficiency in his or her claim within sixty (60) days of the Administrator providing notice of the deficiency. The Administrator will notify a claimant if his or her claim ultimately is rejected. Further details regarding the Settlement Administrator's duties and claim-review criteria are set forth in Section IV of the settlement (Exhibit 1).

### 3. *The proposed attorneys' fees.*

Pursuant to the Settlement Agreement, NNA has agreed not to object to or oppose an application by Class Counsel for attorneys' fees not to exceed $2,750,000, to be paid separately by NAA. Plaintiff's counsel estimates that this represents approximately 15% of the value of the settlement. The attorneys' fees and expense award is scheduled to be distributed to counsel within thirty (30) days of the settlement's Effective Date.

---

[8] A copy of the proposed Claim Form is attached as Exhibit 5.

The Supreme Court has expressed a preference that parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, the parties reached such an agreement, but only after resolving all other terms of the Settlement. Given that the fee will be separately paid by NNA, and will not decrease benefits for the Settlement Class, the Court can preliminarily approve the fee for purposes of preliminary approval and class notice. Consistent with the Settlement Agreement and Rule 23(h), Plaintiff's counsel will separately move for an award of fees and costs prior to the objection deadline, and the Court will have a full opportunity to consider the fee as part of the phase two final approval process.

NNA also has agreed not to object to or oppose a request for reimbursement of expenses not to exceed $225,000, to be paid separately by NAA. These expenses were all necessary in the pursuit of this litigation and the results obtained. These costs were reasonable and necessary. It is appropriate and customary in class litigation for class counsel to be reimbursed for out-of-pocket litigation expenses, and the Court may make a preliminary finding that such costs are reasonable. *See* 2 Joseph M. McLaughlin, MCLAUGHLIN ON CLASS ACTIONS, § 6:24 (8th ed. 2011) (noting that "class counsel also is entitled to reimbursement from the class recovery (without interest) for the costs and reasonable out-of-pocket expenses incurred in prosecuting the litigation").

### 4. *The proposal treats Settlement Class Members equitably.*

The settlement treats Settlement Class Members fairly and equitably. All current owners and lessees of Class Vehicles registered in Missouri are eligible for the inspection and repair program, and all current and former owners and lessees of Class Vehicles who paid for corrosion repairs to front floor pans when a Class Vehicle was registered in Missouri are eligible for reimbursement. In this respect, all Settlement Class Members receive substantially the same benefits, and the settlement does not differentiate between subcategories of Settlement Class

14

Members unjustifiably. No Settlement Class Members receive special treatment, except as specifically explained regarding the "Service Award" to Plaintiff who initiated and participated in the case.

**D.    The Experience and Views of Counsel.**

A court evaluating a proposed settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (quoting Fed. Judicial Ctr., Manual for Complex Litig. § 30.42 at 240 (3d. ed. 1997)). Although the Court is not bound by counsel's opinion, their opinion nonetheless carries weight in assessing a settlement. *Sanderson v. Unilever Supply Chain, Inc.*, 10-cv-00775-FJG, 2011 WL 5822413, at \*3-4 (W.D. Mo. Nov. 16, 2011) (crediting experienced class counsel's belief that the settlement was fair, reasonable, and adequate). Here, the Settlement Class had the benefit of attorneys who are highly experienced in complex class actions litigation and familiar with the facts and law in the case, and who have negotiated many class action settlements. In counsels' view, the settlement provides substantial benefits to the Settlement Class, especially when one considers, among other things, the attendant expense, risks, difficulties, delays and uncertainties of litigation, trial and post-trial proceedings. Further, in counsels' experience, when compared with similar litigation, the relief to the Settlement Class is significant and meaningful.

**E.    The Requested Service Award Is Reasonable.**

Plaintiff seeks a service payment for Laura Frances Hays in her capacity as Class Representative. Hays (1) initiated the litigation in consultation with her counsel; (2) actively participated in the litigation, including providing documents and submitting to deposition; (3)

personally attended the early mediation held in December 2017; and (4) monitored the ongoing negotiations in 2021 and ultimately approved the settlement. For her service, Plaintiff seeks a service award of $6,000.

Courts recognize that the risk, time, and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award above-and-beyond what other settling plaintiffs receive. *See Claxton v. Kum & Go, L.C.*, No. 16-3385, 2015 WL 3648776 at *2, 7 (W.D. Mo. June 11, 2015) (approving incentive award to named plaintiff in the amount of $14,145); *Johnson*, 2015 WL 12806576 *1 (W.D. Mo. Dec. 12, 2015) (approving the terms of the Settlement agreement, including incentive award to named plaintiff in the amount of $7,500); *Hermsen v. City of Kansas City*, No. 11-753 at Doc. # 115 (W.D. Mo. Sept. 22, 2014) (approving service award to named plaintiff in the amount of $42,282.12, representing 3% of the common fund); *Tussey v. ABB, Inc.*, No. 06-04305, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) (approving $25,000 service awards for three class representatives); *Rawa v. Monsanto Co.*, No. 17-1252, 2018 WL 2389040 at *9 (E.D. Mo. May 25, 2018) (approving service awards of $10,000; $5,000 and $2,500). Given the importance of the assistance provided by Plaintiff, the Court can preliminarily find that the requested service award is reasonable, and take up a final determination of the award as part of the final approval process.

## V. CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE.

The second part of Rule 23(e)(1) requires the Court to determine that it is likely to certify the class for settlement purposes. The Advisory Committee comment states:

> One key element is class certification. If the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted.

16

***

> The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement.

Rule 23 requires that an action satisfy the four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

In this case, the Court previously granted class certification, finding that Plaintiff satisfied the criteria set forth in Rule 23. The Settlement Class conforms to the class definition articulated by the Court without any meaningful changes or modifications. *Compare* Order [Doc. 120] (March 8, 2021) *with* Exhibit 1 at ¶ 21. The settlement agreement does clarify that individuals who previously paid for repairs must have owned or leased a Class Vehicle that was registered in Missouri at the time of the corrosion repair to a front floor pan—a provision that the parties agreed to and inferred from the Court's certification order. Because the Settlement follows a fully-litigated class certification process, the Court need not undertake a new review of the Rule 23 factors at the preliminary approval stage.

Thus, the proposed settlement satisfies the requirement of Rule 23(e) that Court find it is "likely [to] be able to certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii).

## VI.    CONCLUSION

The settlement presented is an immediate, real, substantial, and fair settlement. It achieves the goals of the litigation, benefits the entire Settlement Class and the public, and accounts for the risks and uncertainties of continued, vigorously contested litigation. Plaintiff, therefore, respectfully requests that the Court preliminarily approve the settlement as provided in Exhibit 1,

in whole and without delay. Plaintiffs have submitted a proposed Order for the Court's consideration contemporaneous with this Motion.

DATED: March 7, 2022                    Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

_/s/ Matthew L. Dameron_
Matthew L. Dameron (MO Bar No. 52093)
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Tel:    (816) 945-7110
Fax:    (816) 945-7118
matt@williamsdirks.com

Norman E. Siegel (MO Bar No. 44378)
Todd E. Hilton (MO Bar No. 51388)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel:    (816) 714-7100
Fax:    (816) 714-7101
siegel@stuevesiegel.com
hilton@stuevesiegel.com

Tim E. Dollar (MO Bar No. 33123)
J.J. Burns (MO Bar No. 64758)
**DOLLAR BURNS BECKER & HERSHEWE**
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Tel:    (816) 876-2600
Fax:    (816) 221-8763
timd@dollar-law.com
jjb@dollar-law.com

***Counsel for Plaintiff and the Proposed Settlement Class***

18

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 7th day of March 2022, the foregoing was filed using the Court

CM/ECF System, which will provide notice of the same to all counsel of record.

_/s/ Matthew L. Dameron_
Counsel for Plaintiff

19